**HARRY WINSTON, INC., Plaintiff,**

v.

**ZALE JEWELRY COMPANY, Defendant.**

United States District Court
S. D. New York.
Jan. 11, 1961.

Harry Torczyner, New York City, for plaintiff; Jules Schlossberg, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, for defendant; Milton Kunen, New York City, of counsel.

HERLANDS, District Judge.

Two motions are before the Court: Motion No. 56 by the plaintiff for a preliminary injunction against defendant's allegedly false advertising; Motion No. 73 by the defendant for an order transferring this case to the United States District Court for the Northern District of Texas.

This action was originally instituted in the Supreme Court of the State of New York, County of New York by the service of a summons and complaint upon the defendant in the State of New York on December 6, 1960. On December 9, 1960, the action was removed to this Court.

Simultaneously with the service of the summons and complaint, there was served on the defendant in the State court action, a notice of motion for a preliminary injunction. That motion for a preliminary injunction was stayed by the removal but has been brought on in this court by a notice of motion returnable on December 20, 1960. Both motions have been argued together on that date.

The action is one of which this court has original jurisdiction (28 U.S.C.A. § 1332); was removable to this court by the defendant (28 U.S.C.A. § 1441), in that it is a civil action wherein the matter in controversy exceeds the sum of $10,000 and is between citizens of different states.

Plaintiff was and is a New York corporation, with its principal place of business in New York State, at 718 Fifth Avenue, New York, N. Y. Defendant was and is a Texas corporation, with its principal place of business in Texas, at 512 South Akard Street, Dallas; and was not and is not a citizen of New York State.

*The Complaint Verified December 5, 1960*

The complaint contains the following material averments:

The plaintiff is engaged *inter alia* in the business of selling loose diamonds and pieces of fine jewelry, "both retail and wholesale" (par. Third). The defendant operates and maintains its own stores and concessions for the retail sale of jewelry, diamond rings, watches and kindred articles (par. Fourth).

In the early part of 1959, Montgomery Ward & Company (the department store and mail order firm) entered into an agreement with the plaintiff, whereby the plaintiff would sell diamonds to Montgomery Ward and would arrange for ring manufacturers to mount loose diamonds to be sold by Montgomery Ward through its retail outlets and mail order department. It was further agreed that the name "Harry Winston" would not be used

by Montgomery Ward as part of an advertising medium for the sale of merchandise and that Montgomery Ward would not in any other manner represent that the merchandise was purchased from Harry Winston, Inc. (par. Fifth).

Following the agreement, Montgomery Ward purchased from the plaintiff and the plaintiff shipped to Montgomery Ward both loose and mounted diamond merchandise, to be sold by it through its retail outlets and through its catalog under its own name (par. Sixth).

In or about June 1960, Montgomery Ward leased the jewelry department in its Fort Worth store to the defendant; and Montgomery Ward sold all the jewelry, watches, diamond rings and kindred articles in the jewelry department maintained by it at its Fort Worth store to the defendant (par. Seventh).

"[S]ome of the diamonds acquired by the defendant was merchandise which had been sold by the plaintiff to Montgomery Ward & Company" (par. Eighth).

Thereupon, the defendant advertised "that it was offering for sale Harry Winston diamonds at low prices on Ward's easy credit terms." This advertisement appeared in the Fort Worth Star Telegram of Fort Worth, Texas. This advertisement was placed by the defendant without the plaintiff's permission and without Montgomery Ward's consent (par. Ninth).

The plaintiff requested that the defendant "refrain from advertising the name Harry Winston in connection with the sale of the defendant's products" (par. Tenth).

The defendant "removed" the merchandise which it "had bought from Montgomery Ward & Company." The defendant advertised "Harry Winston diamonds at a 25% discount" in the Dallas Times Herald (July 15, 1960) and in the San Antonio Express & News (November 13, 1960) (par. Eleventh).

The defendant's advertisements are "false and untrue" in that: (i) "the defendant [sic] did not sell to the defend-
ant the diamonds which the defendant has advertised for sale as Harry Winston diamonds"; (ii) "the Harry Winston price described in the advertisement is false and untrue in that the plaintiff did not have a posted Harry Winston price on the diamonds offered for sale"; (iii) "the merchandise which the plaintiff had sold to Montgomery Ward & Company did not have imprinted on said merchandise the name Harry Winston"; (iv) "there are no identifying marks on the merchandise" (par. Twelfth).

The defendant was "not authorized" by either the plaintiff or Montgomery Ward to advertise "Harry Winston diamonds in connection with the sale of diamonds." The defendant has refused to stop the continuation of such advertising "after due demand" was made upon the defendant (par. Thirteenth).

The defendant's acts of "false advertising," unless restrained, will cause the plaintiff irreparable damage for which the plaintiff has no adequate remedy at law (par. Fourteenth).

The prayer for relief is for an injunction restraining the defendant from: (1) "advertising the sale of Harry Winston diamonds in connection with any of the defendant's advertising"; (2) "advertising the name Harry Winston in connection with the sale of any of its products"; (3) "advertising that it sells Harry Winston diamonds"; (4) "displaying the name Harry Winston on any diamonds in any of its establishments."

## I.

### The Motion For A Preliminary Injunction

*The Moving Affidavit of Jerome Winston Sworn to December 5, 1960*

This affidavit by the manager of "the loose diamond division" of the plaintiff is an elaboration of the foregoing complaint. At the outset, it states that the requested temporary injunction is to restrain the defendant from advertising that it sells "Harry Winston diamonds."

Among the factual recitals are the following:

1. Plaintiff has been engaged for about thirty years in the business of "cutting and polishing diamonds and rare gems" and of selling "loose diamonds" and pieces of "fine jewelry," both retail and wholesale (p. 1).

2. Plaintiff has customers "all over the world." The name "Harry Winston associated with the sale of diamonds carries with it a mark of quality and prestige" (p. 1).

3. There is a repetition of the facts alleged in paragraphs Fifth and Sixth of the complaint, with emphasis on the circumstance that Montgomery Ward sold the merchandise purchased from plaintiff under Montgomery Ward's "own name" (p. 2).

4. A copy of the advertisement placed by the defendant in the Fort Worth Star Telegram of June 16, 1960 is Exhibit "A." This advertisement includes the following text in large lettering:

> "Harry Winston
> Diamonds At Low
> Prices On Ward's
> Easy Credit Terms
> Full 25% Off
> Only $5.00 Down
> Easy Payment Plan"

5. Plaintiff's attorney wrote a cease and desist letter to Montgomery Ward, under date of June 22, 1960 (Exhibit "B"), as the latter had leased the jewelry department in the Fort Worth store to the defendant and that department was supposed to be operated as part of Montgomery Ward. On the same day, plaintiff's attorney telephoned Montgomery Ward about the same matter. That afternoon, plaintiff's attorney received a telegram (Exhibit "C") from Montgomery Ward, stating that the defendant "has agreed not to use Winston name in advertising Ward merchandise."

6. On June 27, 1960, plaintiff's attorney again wrote to Montgomery Ward (Exhibit "D"), who replied on June 30, 1960 (Exhibit "E") that Montgomery Ward would not permit any advertising of diamonds "under the name of Winston."

7. The defendant placed an advertisement in the Dallas Times Herald of July 15, 1960 (Exhibit "F"). This is the advertisement referred to in paragraph Eleventh of the complaint.

This advertisement contains the following features:

> "Harry Winston
> Diamonds" [In very large letters]
>
> "rare jewels of the world" [in large letters]
>
> "25% discount
> from original       [in large letters]
> price"
>
> "Only Zale's can offer you this special purchase of famous Harry Winston diamonds at such low prices! Choose from the most popular cuts elegantly styled for both men and women. Visit Zale's now . . . select your diamonds from this fabulous Harry Winston collection!"

There are then set forth fourteen items (such as "diamond ring," "wedding set," "wedding band"), alongside each of which are prices listed comparatively in parallel columns headed, respectively, as follows:

| "Harry Winston Price" | "Zale Discount Price" |
|---|---|

Seven items are illustrated in enlarged drawings or designs. Each is a mounted piece of jewelry containing diamonds.

8. When plaintiff's attorney discussed the above advertisement with Montgomery Ward, he was told that "Montgomery Ward had sold the merchandise to Zale Jewelry Company, Inc. at the time that it gave up the operation in the jewelry department at the Fort Worth Store" (p. 4).

9. The advertisement described in paragraph 7 above was published without the plaintiff's permission and "deliberately falsified its contents with respect to the published Winston prices. The merchandise advertised in this advertisement was not purchased from the plaintiff. There are no identifying marks

or symbols describing them as Harry Winston diamonds" (p. 5).

10. The affiant makes the hearsay statement (based on a conversation with a Mr. Wheeler, the merchandise manager of Montgomery Ward) that the defendant "had bought not only our [the plaintiff's] merchandise, but also merchandise from other manufacturers and it would be impossible for the purchaser to identify the origin of the manufacture" (p. 5).

11. Montgomery Ward's position (expressed in its letter of July 26, 1960; Exhibit "G") was that it "has no control over what Zale's Jewelers does with its own property in store locations in which Wards has no interest"; that "it cannot control the disposition of merchandise owned by Zale's Jewelers in Zale's own retail outlets."

12. Thereafter, the affiant had a conversation with Morris Zale, chairman of defendant's board of directors. Mr. Zale said that he had purchased the merchandise from Montgomery Ward and that the defendant would stop the advertising if the plaintiff bought it from the defendant (pp. 5–6). Mr. Zale suggested that possibly the plaintiff "could take back part of the merchandise as an exchange for other merchandise which they [the defendant] would purchase" (p. 6). Mr. Zale "assured" the affiant that in the meantime the defendant would not place any newspaper advertisements using the name of Harry Winston (p. 6).

13. The defendant is a customer of the plaintiff, buying loose diamonds from plaintiff through defendant's buying offices called Texoma Wholesale Corporation, located in New York (p. 6).

14. Early in October 1960, the affiant went to defendant's New York office to inspect the merchandise. It was tentatively agreed with defendant (represented by its president, Ben A. Lipshy, and its buyer, Joe Slovak) that plaintiff would exchange some of the merchandise and issue a credit and that defendant would buy at least an equal amount of merchandise from plaintiff; and that defendant would refrain from using the name Harry Winston in advertising mer- chandise. Subsequently, there was an exchange of letters, unsuccessfully attempting to set forth the terms of a mutually acceptable agreement (pp. 6–7).

15. On October 26, 1960, defendant's president (Mr. Lipshy) wrote to its buyer, Joe Slovak, "c/o Zale Jewelry Company, 15 West 47th Street, New York 36, N. Y.," and sent a carbon copy of the letter to the plaintiff (Exhibit "H") (p. 7).

16. On October 28, 1960, the plaintiff wrote to defendant's president, Mr. Lipshy, at "P. O. Box 2219, Dallas 1, Texas" (Exhibit "I") (p. 7).

17. Thereafter, on November 13, 1960, the defendant republished in the San Antonio Express and News (Exhibit "J"), the same advertisement that had appeared in the Dallas Times Herald of July 15, 1960 (p. 7).

18. The affiant characterizes Exhibits "F" and "J" as "complete falsification" because the diamonds offered for sale by the defendant "have no identifying marks on them"; there is "no published Harry Winston price as advertised" in these advertisements; "the defendant has deliberately misled the buying public in believing that they could buy plaintiff's merchandise at 25% discount" (p. 7).

19. The affiant concludes with the charge that the defendant's advertisements have had and are having the effect of damaging plaintiff's "reputation," of downgrading the plaintiff and its merchandise, and of causing "irrevocable" [sic] damage (p. 8).

*Deposition of Alfred E. Stein*

The deposition of Alfred E. Stein was taken in behalf of the plaintiff on December 29, 1960, pursuant to this Court's order. Mr. Stein, sales manager of the Feature Ring Company of 130 West 46th Street, New York, N. Y., testified that he was present in the plaintiff's office on June 5, 1959 at an all-day conference attended by Montgomery Ward's merchandising man (Wheeler), its diamond ring buyer (Bartmass) and Jerome Winston. At that conference, Stein took the order for the diamond rings to be made up for Montgomery Ward—the diamonds being

sold by plaintiff and the mountings by Stein's company. The witness described (1) Montgomery Ward's plan of price ranges, categories of styling and the qualities of diamonds; (2) how "the proper retail price" was calculated with the participation of Jerome Winston; (3) the use of gold, blue and red tags; (4) customers' numbers, style numbers and stock numbers, none of which were given to Stein by the plaintiff; (5) the shipment of the finished merchandise (14,078 pieces) to the plaintiff and the billing therefor to the plaintiff and plaintiff's payment; (6) a catalogue [Exhibit 5] prepared at the joint cost of Montgomery Ward and Stein's company, copies being sent to the plaintiff; (7) the presence of Montgomery Ward's alleged trademark on the shank of each ring; (8) Stein's company's substantial and continuing transactions with the plaintiff; (9) plaintiff's ordering by catalogue numbers.

The witness further testified that he does not know whether the defendant is located at 15 West 47th Street, Manhattan, N. Y., but that "Texoma" is located at that address and Texoma buys ring-mountings for the defendant.

*Papers in Opposition to the Preliminary Injunction Motion*

The defendant has moved to transfer the action to the United States District Court for the Northern District of Texas. It seeks to stay the hearing on the plaintiff's preliminary injunction motion pending the Court's disposition of the transfer motion. The papers submitted by the defendant as the moving party for the transfer order also detail the major facts upon which the defendant intends to rely to defeat the plaintiff's application for a preliminary injunction.

In view of the disposition of the defendant's transfer motion, it is not necessary for this Court to adjudicate plaintiff's preliminary injunction motion. Nevertheless, the defendant's position and related evidence vis-à-vis the merits of the controversy must be analyzed to the extent that that position and evidence bear upon the desiderata basic to a decision of the defendant's transfer mo-

tion under 28 U.S.C.A. § 1404(a). See United States v. General Motors Corporation, D.C.S.D.N.Y.1960, 183 F.Supp. 858, 860 ff.

## II.

### The Motion to Transfer

In support of its motion to transfer, the defendant asserts: (1) that the defendant, a Texas corporation, has its principal place of business in Dallas; and plaintiff could have brought this action in the United States District Court for the Northern District of Texas; (2) that all of the alleged wrongful acts occurred in Texas; (3) that all of the persons who participated in the alleged wrongs were and are residents of Texas and will be required as defense witnesses; (4) that the substantive tort law to be interpreted and applied by the trial court will be statutes or cases of the State of Texas; and (5) that the defendant has sustained its burden of convincingly demonstrating the existence of pertinent factors that—in the aggregate and in the light of the controlling criteria—justify a rejection of plaintiff's choice of forum, a choice otherwise entitled to great weight and respect.

There can be no dispute over the controlling statutory criteria as judicially interpreted. The following decisions are illustrative. Motion for transfer denied: Lykes Bros. Steamship Co. v. Sugarman, 2d Cir., 1959, 272 F.2d 679; Peyser v. General Motors Corporation, D.C.S.D.N.Y.1958, 158 F.Supp. 526; Chicopee Manufacturing Corporation v. Kendall Company, D.C.W.D.S.C.1957, 154 F.Supp. 248; National Tea Company v. Marseille, D.C.S.D.N.Y.1956, 142 F.Supp. 415. Cf. United States Lines Company v. MacMahon, 2 Cir., 1960, 285 F.2d 212. Motion for transfer granted: United States v. General Motors Corporation, D.C.S.D. N.Y.1960, 183 F.Supp. 858; Jurgelis v. Southern Motors Express, Inc., D.C.E.D. Pa.1959, 169 F.Supp. 345; Johnson v. Smith Meal Company, D.C.E.D.N.Y.1958, 160 F.Supp. 208; Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L. Ed. 789; Molloy v. Bemis Bro. Bag Company, D.C.S.D.N.Y.1955, 130 F.Supp.

265; Welch v. Esso Shipping Co., D.C. S.D.N.Y.1953, 112 F.Supp. 611; Duffy v. United States, D.C.S.D.N.Y.1953, 114 F. Supp. 881; Leppard v. Jordan's Truck Line, D.C.E.D.S.C.1953, 110 F.Supp. 811; Tankel v. Seiberling Rubber Co., D.C.N. D.Calif.1951, 95 F.Supp. 987; Banachowski v. Atlantic Refining Co., D.C.S.D.N.Y. 1949, 84 F.Supp. 444.

As the plaintiff might have brought this action in the United States District Court for the Northern District of Texas, we do not have the problem presented in Hoffman v. Blaski, 1960, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254.

Legal principles are the bridges between cases separated by the boundaries of fact.

The application of recognized principles to the specific facts of this particular litigation is the core of the present controversy.

The evidence fully supports the defendant's contentions with respect to a transfer as a summary of the record demonstrates.

The defendant was not a party to the 1959 agreement between the plaintiff and Montgomery Ward. In any event, the plaintiff does not suggest that the contract or performance under it took place in the State of New York.

The complaint is directed against advertisements and sales by defendant that took place exclusively in Texas.

It is conceded that the defendant's acquisition by purchase of the diamonds that the plaintiff had originally sold to Montgomery Ward occurred in Texas.

Moreover, the ultimate purchases of the advertised diamonds were by Texas residents who bought them in Texas at the defendant's establishments in Texas, presumably on the basis of advertisements' in Texas newspapers.

The defendant has its principal office in Texas.

All of the following witnesses of the defendant are located in Texas:

1. Defendant's president, Ben A. Lipshy:

Mr. Lipshy has submitted two affidavits, one sworn to December 16, 1960, the other December 21, 1960. He has resided in Texas for the past ten years. He avers that, in 1960, the defendant purchased from Montgomery Ward diamonds mounted in various settings. All of these items, according to Montgomery Ward's representations, had been originally purchased by Montgomery Ward from the plaintiff. All of these items had tags on them setting out a suggested retail price. According to Montgomery Ward, all of these tags had been prepared by the plaintiff or under plaintiff's direction and control, prior to the time that Montgomery Ward received the merchandise. The merchandise purchased by the defendant was inventoried and counted by virtue of plaintiff's own markings previously placed thereon. Thus, defendant had excellent identification of the merchandise referred to in the complaint.

In addition, this witness states that all of the merchandise purchased by defendant from Montgomery Ward is completely described in a catalogue prepared by the plaintiff; and that the merchandise was tagged with differently colored tags, which color scheme conformed to certain notations in plaintiff's catalogue. Furthermore, this affiant claims, that defendant used plaintiff's own lot numbers and catalogues in buying the merchandise from Montgomery Ward. Thereafter, the defendant kept the merchandise in two of its retail stores, one in Dallas, the other in San Antonio. The merchandise, he says, had suggested retail tags thereon; and, in addition, that merchandise was kept segregated by keeping it and transporting it in separate trays.

He declares that, in the advertisements placed by defendant, no merchandise was advertised ("or sold pursuant thereto") except the merchandise bought from Montgomery Ward. This merchandise had the colored tags, suggested retail price, appeared in the catalogue furnished by plaintiff to Montgomery Ward, and was kept segregated. Any retail sales and offers of sales by the defend-

ant's stores at 1606 Main Street, Dallas, and 400 E. Houston Street, San Antonio, "were only of this merchandise"; and "all merchandise represented and sold as Harry Winston diamonds were in truth and in fact merchandise purchased as" already described above.

Mr. Lipshy swore that he makes approximately six to eight business trips a year to New York City; that the defendant "does not operate any retail outlets in New York State, nor does it have any leased departments in New York State, nor does it have any connection whatsoever * * * with any retail sale of merchandise in New York State"; that "the New York office which Zale maintains at 15 West 47th Street includes no advertising personnel"; that "[a]n advertising department is maintained in the general office in Dallas, Texas;" that "there are no personnel in New York who have any knowledge whatsoever of any of the transactions" involved in this litigation; that "all persons who have any knowledge whatsoever" of the advertising or the sale of the merchandise involved herein reside either in Dallas, Texas or San Antonio, Texas.

Mr. Lipshy points to the facts that the defendant is a publicly held corporation, incorporated under the laws of the State of Texas, and whose shares of common stock are traded on the American Stock Exchange; that all business policies of the defendant are made and carried out in Texas; that the regular meetings of the defendant's board of directors are held in Dallas; that six of the eight members of that board are residents of Texas, and the other two are residents of Colorado and Oklahoma; that all of the defendant's executive officers and personnel maintain their offices in Texas.

Mr. Lipshy describes the negotiations to return the merchandise to plaintiff and to adjust the matter, and how the merchandise was placed for sale first in defendant's Dallas store and later in defendant's San Antonio store.

2. Defendant's Executive Vice-President, Al Gartner:

Mr. Gartner has submitted an affidavit, sworn to December 21, 1960, which *inter alia* shows that he is a resident of Texas, and that he "personally supervised and handled the purchase" by defendant of the jewelry department of the Montgomery Ward store at Ft. Worth, Texas. The details of his four-page affidavit show that he would be a key witness for the defendant, inasmuch as he has personal knowledge of the inventorying and purchase of the merchandise in issue and that the defendant's New York office "had nothing whatsoever to do in any way * * * with any part of the purchase, advertising of any of the merchandise" involved herein.

Mr. Gartner "personally prepared the layouts" of the advertisements and arranged for their publication. He is familiar with the manner in which the advertised merchandise was sold at defendant's two stores in Texas.

He named the following defendant's employees and others—all of whom are residents of Texas—who have personal knowledge of the advertising of this merchandise, its purchase and its sale, its inventorying, the relevant invoices furnished by Montgomery Ward, and the prices:

Frank Lindley, store manager of the defendant's Dallas store;

Mel Berns, supervisor of the defendant's San Antonio store;

Nelda Shannon, administrative employee in defendant's general offices in Dallas;

Herb Tasman

D. S. Waters, comptroller of the Montgomery Ward store in Ft. Worth;

L. T. Clark, assistant manager of the Dallas store;

Clara Levine, saleslady at the Dallas store.

3. Nelda Shannon:

She has submitted an affidavit sworn to December 21, 1960, which shows that she is a resident of Texas; and that she is a key witness for the defendant with reference to the purchase, inven-

torying, payment, relevant Montgomery Ward original purchase orders to the plaintiff, original memoranda of plaintiff to Montgomery Ward, pricing and billing of the merchandise involved herein.

4. Frank Lindley:

He has submitted an affidavit sworn to December 21, 1960, which shows that he is a resident of Texas; and that he is another key witness for the defendant with reference to the segregation, advertising, and actual methods used by the defendant in selling the merchandise involved herein.

5. L. T. Clark:

He has submitted an affidavit, sworn to December 21, 1960, showing that he is a resident of Texas; and that the merchandise in issue was segregated, kept in locked drawers, and "shown only on request of customers that asked to see them."

6. Clara Levine:

She has submitted an affidavit, sworn to December 21, 1960, showing that she is a resident of Texas. She corroborates defendant's assertion that the merchandise involved herein was "kept in trays separate" from other merchandise, was "kept in a locked drawer," and that the salesmen "were instructed to sell these diamonds only when we had a call for them."

The clear import of the foregoing affidavits is that all of the defendant's witnesses whose testimony is critically important for its defense are residents of Texas, and that all of the acts complained of occurred in Texas. Compulsory process would not be available to produce such witnesses in New York.

The proofs offered by the plaintiff in opposition to the change of venue motion do not attenuate the defendant's showing of a strong balance of convenience in favor of a transfer.

The plaintiff's claim is for the tort of unfair competition. It is not a contract action. All of the allegedly tortious acts took place in Texas. Since the wrong took place in Texas, the law to be applied is that of Texas. The United States Dis-

trict Court for the Northern District of Texas is the logical court to determine plaintiff's motion because it is at home with the controlling substantive law.

In view of the foregoing, the defendant's motion for a transfer to the United States District Court for the Northern District of Texas is granted; and the plaintiff's motion for a preliminary injunction is stayed pending the said transfer.

Settle orders on notice.