**HARRY RICH CORPORATION, Florida Carpet Corporation, Carpet Service Corporation, Plaintiffs,**

v.

**CURTISS–WRIGHT CORPORATION, Defendant.**

**No. 64 Civ. 819.**

United States District Court
S. D. New York.

Sept. 25, 1969.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiffs, Theodore H. Friedman, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant, James B. Magnor, New York City, of counsel.

## OPINION

LASKER, District Judge.

This is a motion under Section 1404(a) of Title 28, U.S.C., for a transfer to the Southern District of Florida. Jurisdiction of this court is predicated on diversity of citizenship. In a complaint filed on March 13, 1964, plaintiffs allege that defendant breached express and implied warranties resulting in alleged damage to the plaintiffs in the sum of $10,-300,000.

The three corporate plaintiffs are Florida corporations and are primarily owned and directed by one Harry Rich. Plaintiff Harry Rich Corporation (hereinafter the "Corporation") is a large retail carpet store located in Miami, selling primarily to residents of Dade County. Plaintiff Florida Carpet Corporation was organized in 1956 to act as a wholesaler of carpets and related products. Plaintiff Carpet Service Corporation is a corporation primarily engaged in the installation of carpeting sold by the other two plaintiffs.

The three corporations purchased $376,516.04 of Curon from defendant in the period from February 28, 1956 to November 9, 1960. The Curon, a synthetic plastic substance used as carpet underlay or padding, was shipped by Curtiss-Wright to Miami from its plant in Quehanna, Pennsylvania, F.O.B. Quehanna. Plaintiffs allege that the Curon manufactured by Curtiss-Wright was defective, and that in the years after its installation it turned "gummy and crumbly" and damaged both the underside of carpets and the floors to which it was applied. Plaintiffs seek compensation for damages to their business reputations and decreased sales allegedly stemming from their active association with Curon.

28 U.S.C. § 1404(a), provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

This section thus raises two basic issues for consideration: first, whether the Southern District of Florida is a district where the action "might have been brought"; and second, whether the convenience of parties and witnesses and the interest of justice would best be served by a transfer.

## I. WHERE THE ACTION MIGHT HAVE BEEN BROUGHT

The phrase "where it might have been brought" refers to the situation at the time that the suit is brought —in the instant case March 1964. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); Twentieth Century-Fox Film Corp. v. Taylor, 239 F.Supp. 913 (S.D.N.Y., 1965). The plaintiff must have had an unqualified right to bring the action in the proposed transferee district independent of the consent of the defendant, and accordingly the court should make an independent appraisal of the issue. Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D. N.Y., 1967).

An action "might have been brought" within the meaning of the statute only in a district where (1) venue would have been proper and (2) the defendant would have been amenable to process. Foster-Milburn Co. v. Knight, 181 F.2d 949 (2 Cir., 1950); Jordan v. U. S. Lines, Inc., 291 F.Supp. 600, 601 (S.D.N.Y., 1968). As to the latter criteria, the court in Jaffe v. Dolan, 264 F.Supp. 845, 847 (E.D.N.Y.1967), stated:

"In diversity actions, a federal district court can assert personal jurisdiction over a defendant only if the state court, under constitutionally valid state legislation in the state where the federal court sits, could have exercised such jurisdiction. Arrowsmith v. United Press Int'l, 320 F.2d 219, 6 A.L.R.3d 1072 (2d Cir. 1963)."

Accordingly, we must examine Florida law to determine whether at the time the suit was commenced (March 1964) the defendant would have been amenable to Florida process.

The relevant Florida statutes are Sections 47.16 and 47.17, Florida Statutes Annotated. Section 47.16 states:

"(1) The acceptance by any * * * foreign corporation[s] * * * of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, shall be deemed equivalent to an appointment by such * * * foreign corporations of the secretary of state of the state as the agent of such * *

foreign corporation upon whom may be served all lawful process in any action, suit or proceeding against them, or either of them, arising out of any transaction or operation connected with or incidental to such business or business venture * * *."

The facts of record clearly demonstrate that Curtiss-Wright was transacting business, or at least carrying on a "business venture" within the meaning of the Florida statute, in connection with its sale of Curon to the three plaintiffs before the court. Curtiss-Wright did more than merely ship Curon to the three plaintiffs. It supplemented these shipments by sending various employees to Florida to conduct promotional activities, including a series of "safaris," i. e., cocktail parties for retail carpet dealers to introduce their new product to them. Curtiss-Wright sent out the invitations to these parties, and their staff members attended them regularly. Defendant further took an active part in the conduct of a newspaper advertisement campaign pushing its product and provided a large quantity of brochures and other promotional material. Apparently much of this was distributed by plaintiff Florida Carpet Corporation, the latter being the exclusive distributor of Curon in the southeastern part of the United States. These activities without question measured up to the "minimum contacts" which the Florida courts have held necessary to subject an out-of-state defendant to the jurisdiction of the Florida courts. See Phillips v. Hooker Chemical Corp., 375 F.2d 189, 192 (5th Cir., 1967). The Florida rule is that the statutory standards for "carrying on a business venture" require a lesser degree of activity than is required for "doing business." State ex rel. Weber v. Register, Fla., 67 So.2d 619 (1963); Lake v. Lucayan Beach Hotel Co., Fla.App., 172 So.2d 260 (1965); Lomas & Nettleton Financial Corp. v. All Coverage Underwriters, Inc., Fla.App., 200 So.2d 564, 565 (1967); Continental Copper & Steel Indus. v. E. C. "Red" Cornelius, Inc., Fla.App., 104 So.2d 40 (1958).

The court in State ex rel. Weber v. Register, supra, stated 67 So.2d at 620:

"There is a vast difference between the words 'a business' and the words 'business venture' as used in Section 47.16, supra. One may engage in a 'business venture' without operating, conducting, engaging in or carrying on 'a business.' "

■ While we believe that the promotional activities of defendant constituted "doing business" within the State of Florida, they unquestionably constituted a "business venture" within that state. It goes without saying that the cause of action presently before the court arose out of the transactions of which defendant's activities in Florida were an integral part. See H. Bell & Assoc. Inc. v. Keasbey & Mattison Co., Fla.App., 140 So.2d 125 (1962). The fact that defendant's activities in Florida ceased prior to March of 1964 should not alter its amenability to suit. As the court stated in Steel Joist Institute, Inc. v. J. H. Mann, III, Inc., Fla.App., 171 So.2d 625 (1965), at 627:

"The determination, however, of whether appellant was 'present' in this State, for purposes of service of process, is not influenced by the discontinuance of the program for a period of months before the complaint was filed. The inquiry is directed to whether appellant was 'engaged in business' or a 'business venture' before and at the time the joists were sold and placed in the building that collapsed."

Furthermore, Curtiss-Wright could have been served in the State of Florida pursuant to Section 47.17(4) and (5), Florida Statutes Annotated, which sections provide:

"Process against any corporation, domestic or foreign, may be served:

* * * * * *

"(4) Upon any officer or business agent, resident in the state of Florida.

"(5) If a foreign corporation shall have none of the foregoing officers or

**1118**

agents in this state, service may be made upon any agent transacting business for it in this state."

■ It is undisputed that Curtiss-Wright employed at least one agent, residing in the State of Florida, in 1964. The agent, Villacorte, although directly involved with Curtiss-Wright's aeronautical division, nevertheless could have been served in this action under Section 47.17(4) and (5). The court in Woodham v. Northwestern Steel & Wire Co., 390 F.2d 27, 30 (5th Cir., 1968), stated that:

"* * * where a business agent of a foreign corporation actually resides in Florida and engages in sustained, continuous business for his employer, the corporation may be sued by service on the resident agent under Section 47.17(4), F.S.A., regardless of where the cause of action arose because it can be reasonably expected that the corporation will receive notice of the suit."

If a business agent can be served under these conditions, it is clear that he likewise could be served "where the cause of action arose" in fact, in Florida, but merely through the activities of another division of the same corporation. Therefore, the Southern District of Florida is a district in which suit "might have been brought."

## II. THE CONVENIENCE OF PARTIES AND WITNESSES AND THE INTEREST OF JUSTICE

### A. *Right of a Plaintiff to Move for Change of Venue*

■ This motion presents the situation of a plaintiff seeking to transfer a suit from the forum that he himself initially selected. While unusual, it is not unknown for a plaintiff to seek relief under Section 1404(a); and there are no policy reasons that militate against such a motion. Philip Carey Mfg. Co. v. Taylor, 286 F.2d 782, 784 (6th Cir., 1961), cert. den. 366 U.S. 948, 81 S.Ct. 1903, 6 L.Ed.2d 1242 (1961); Dufek v. Roux Distributing Co., 125 F.

Supp. 716, 717 (S.D.N.Y., 1954); Thompson Products, Inc. v. Pennsylvania Railroad Co., 127 F.Supp. 449 (S.D.N.Y., 1955); United States v. United Air Lines, Inc., 216 F.Supp. 709 (D.Nev., 1962), affirmed in part United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir., 1964); Amis Construction Co. v. Pressed Steel Tank Co., 279 F.Supp. 83 (E.D. Wisc., 1968); Thomas v. Silver Creek Coal Co., 264 F.Supp. 833, 835 (E.D.Pa., 1967); Pruess v. Udall, 123 U.S.App. D.C. 301, 359 F.2d 615, 618 (1965).

When a plaintiff is a movant under Section 1404(a) he must show a change in circumstances since the filing of suit. Roberts Brothers, Inc. v. Kurtz Bros., 231 F.Supp. 163, 167 (D.N.J., 1964). It is the contention of plaintiffs in this action that the determination by a Florida state court in Curtiss-Wright v. King, 207 So.2d 294 (Fla.App.3d Dist., 1968), that Curtiss-Wright was amenable to suit in the State of Florida in 1964 because of the presence there of a resident agent constitutes the requisite change of circumstances. This thesis appears sound. Prior to bringing suit in 1964, plaintiffs' counsel had carefully investigated defendant's amenability to suit in Florida; he was informed, in October of 1961, by the Secretary of State of Florida that Curtiss-Wright was not registered with that office as a foreign or domestic corporation. In addition, he made a further unsuccessful search for business agents of the defendant in Florida, and it was not until the decision in Curtiss-Wright v. King, supra, that the presence of E. F. Patrie, an area supervisor for Curtiss-Wright, became known.

■ The defendant argues that prior to the *King* decision plaintiffs had or should have had sufficient knowledge to conclude that Curtiss-Wright was "doing business" or conducting a "business venture" within the State of Florida. This argument overlooks the fact that, even if plaintiffs had had such information, they would not have been able to conclude under the then state of the

law of Florida that the presence of Curtiss-Wright's agent caused it to be amenable to suit under the Florida long-arm statute. The agent carrying on business for Curtiss-Wright in 1964 was involved solely in the aeronautical branch of Curtiss-Wright's business, and as of 1964 it was questionable at best as to whether the presence in Florida of an agent transacting one type of business would render his principal amenable to suit in relation to transactions having to do with another branch of its business. The difficulties with which the plaintiffs were faced in reaching the proper conclusion in 1964 are well illustrated by the numerous changes of position which defendant itself has taken on this question prior to its recent concession that it was indeed amenable to suit in Florida in 1964.[1]

The court finds that the instant motion was brought by plaintiffs within a reasonable time after they became aware of the Florida judicial determination holding that the defendant was amenable to suit in Florida in 1964.

### B. *The Merits of the 1404(a) Motion*

Having determined that plaintiffs have established the necessary change of circumstance warranting consideration of this motion to transfer the case from a district plaintiffs originally chose, we turn our attention to the merits of the motion.

█ The criteria under Section 1404 (a) as to whether transfer should be ordered are much the same as were applicable under the older doctrine of forum non conveniens, although the court's discretion under Section 1404(a) is considerably broader. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The determinative factors as outlined in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct.

839, 91 L.Ed. 1055 (1947), were summarized in United States v. General Motors Corp., 183 F.Supp. 858, 860 (S.D. N.Y., 1960):

> "The principal desiderata are: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of witnesses; possibility of a view, if appropriate; and all other practical problems that would make the trial of a case easy, expeditious and inexpensive. In appraising the factors of public interest, it is also appropriate to give some consideration to the relative state of trial calendar congestion in the districts involved."

Although the usual presumptions as to plaintiff's choice of forum are not appropriate here, the plaintiffs, as movants, must still sustain their burden of proof on this motion. Ford Motor Co. v. Ryan, 182 F.2d 329 (2d Cir., 1950); Rosette v. Crown Record Co., 266 F.Supp. 393 (S.D.N.Y., 1965). We hold that the plaintiffs here have sustained their burden beyond question.

The three plaintiffs are all Florida corporations, and all of their sales were within the State of Florida. The instant action is based upon business activities in Florida, large amounts of Curon having been shipped into that state for further sale and distribution. The plaintiffs allege that the Curon, the bulk of which was sold in the City of Miami in Dade County, was not suitable for its intended use within that area. While all of plaintiffs' officers and employees are residents of Florida, the defendant has indicated during discovery that there are none of its executives in New York having knowledge of the transactions relating to Curon during the time period in issue. See Harry Winston, Inc. v. Zale Jewelry Co., 191 F.Supp. 686, 695 (S.D. N.Y., 1961), in which, on a similar factu-

---

1. On March 27, 1969, defense counsel stated that "there is no question that this action could have been brought by plaintiffs against defendant in March 1964 in the United States District Court for the Southern District of Florida." He then withdrew this concession on April 1, 1969, and finally returned to his original position on June 17, 1969.

al basis, Judge Herlands granted a motion to transfer. Plaintiffs maintain all of their business records within the State of Florida. While defendant's relevant business records were originally located in New York, the court is informed that they have been moved to Cornelius, North Carolina, a location as accessible to the Southern District of Florida as it is to this forum.

Plaintiffs' alleged damages depend almost entirely on their business reputations among wholesale and retail purchasers within the State of Florida. It would thus appear that the State of Florida is the locale having the prime concern with the determination of this suit. As the Supreme Court stated in Gulf Oil Corp. v. Gilbert, supra (330 U.S. at 509, 67 S.Ct. at 843):

> "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home."

The plaintiffs should have the opportunity to establish the damage to their reputations, if any, in the district in which the bulk of their customers reside. To burden a jury in this district with a determination of the matter would not be proper, for, as was stated in Gulf Oil Corp. v. Gilbert, supra (330 U.S. at 508–509, 67 S.Ct. at 843):

> "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."

The defendant asserts that the Curon was not defective when it was shipped from Pennsylvania to Florida. It alleges, rather, that if the Curon later was rendered defective, the defects were brought about by improper storage in Florida, improper installation in Florida, the manner of use by customers in Florida, and/or the peculiar climatic conditions in Florida. But this is no reason to withhold transfer to Florida. To the contrary, the requisite proofs as to these matters certainly are more accessible in Florida. A view of the warehousing facilities used, as well as various installation sites, might prove to be extremely useful. See Gallen v. Howard D. Johnson Co., 271 F.Supp. 680 (S.D.N.Y., 1967). In any event, a jury comprised of residents of the Southern District of Florida will doubtless be more knowledgeable as to the particular climatic conditions of that region and other factors affecting the deterioration of the product than would a jury made up of residents of this district.

A consideration of the convenience of witnesses in this litigation also militates in favor of transfer. For purposes of a Section 1404(a) motion, the determination of the location of the majority of material witnesses is of significant importance. Gallen v. Howard D. Johnson Co., supra. As the court stated in Anthony v. RKO Radio Pictures, Inc., 103 F.Supp. 56, 57 (S.D.N.Y., 1951):

> "In the determination of the question whether a transfer shall be ordered, a factor of considerable importance is the number of witnesses each party is likely to call who are capable of testifying as to determinative issues in the case."

The plaintiffs have indicated that they may call twenty witnesses, eighteen of whom reside in Florida, and seventeen of whom reside in Dade County. The court has no indication from defendant as to the number of its proposed witnesses nor their location. Of plaintiffs' list of twenty proposed witnesses, five are expert witnesses and are not considered for purposes of this motion. Magnetic Engineering & Mfg. Co. v. Dings Magnetic Separator Co., 86 F.Supp. 13 (S.D.N.Y., 1949). However, the remaining witnesses for plaintiffs will testify as to matters highly relevant and material to the determination of this litigation. The plaintiffs here must sustain the burden that, as stated in Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y., 1958),

" * * * more is required of the movant than the mere assertion that it may call a designated number of witnesses at the trial. Of greater importance to a judge * * * is the materiality of the matter to which these witnesses will testify."

Since most of the necessary witnesses are located in Florida, they are beyond the subpoena power of this court. Many of those proposed witnesses are not under the control of the plaintiff corporations, and the attendance of the non-controlled witnesses at a trial approximately 1500 miles from home is at best uncertain. As the Supreme Court stated in Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 511, 67 S.Ct. at 844:

"Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."

See also Securities and Exchange Commission v. Frank, 388 F.2d 486, 491 (2d Cir., 1968); Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 756 (S.D.N.Y., 1966); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 524 (S.D.N.Y., 1964).

Even if plaintiffs' witnesses are amenable to voluntary attendance in this forum, the inconvenience of appearing 1500 miles from home cannot be lightly regarded. Polaroid Corp. v. Casselman, 213 F.Supp. 379 (S.D.N.Y., 1962); Ackert v. Ausman, 198 F.Supp. 538 (S.D. N.Y., 1961). The court in United States v. General Motors Corp., supra, evaluated the inconveniences imposed upon witnesses as follows (183 F.Supp. at 861):

"The personal convenience of these prospective witnesses is not to be ignored cavalierly. If the trial is held in Cleveland, they can return to their homes from day to day, associate with their families and friends, and attend to their personal business. They can use their own automobiles locally, move in familiar surroundings, and keep to a minimum the work which would otherwise pile up during their absence. They can avoid nonreimbursable expenses, bound to be incurred should they be required to travel to and stay in New York. If each of these factors is not considered individually, a serious matter, they may in the aggregate tend to tip the scale in the defendant's favor."

Plaintiffs expect a prolonged trial of this case, and the inconvenience to individual witnesses can only be magnified by such circumstances. Furthermore, there is the distinct possibility that the attendance of plaintiffs' executives at an extended trial in this forum, as well as the shipment of books and records, would substantially disrupt the corporate plaintiffs' business. See Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., supra.

An added factor of some weight in a Section 1404(a) motion was advanced in United States v. General Motors Corp., supra, 183 F.Supp. at 860:

"In appraising the factors of public interest, it is also appropriate to give some consideration to the relative state of trial calendar congestion in the districts involved."

The Clerk of the District Court for the Southern District of Florida has advised this court that a case is ordinarily reached for trial in that district within two months of transfer. Since a pretrial conference has not yet been had in this district, the case would certainly not be tried here as soon as it would in Florida. See also Gallen v. Howard D. Johnson Co., supra.

It is the purpose of Section 1404(a) to assure that a trial will be held at the most convenient forum and at least expense to the parties. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed. 2d 945 (1964). The case at bar has little, if any, connection with the Southern District of New York. The operative facts occurred elsewhere. The defendant chose to do business in Florida, and the current dispute arose there. Accordingly, it

**1122**

is equitable that the case be defended in that forum.

For the reasons stated above the motion to transfer the instant case to the Southern District of Florida is granted.

It is so ordered.