**AMERICAN HOME ASSURANCE COMPANY as Subrogee of Pan American Papers, Inc., Plaintiff,**

v.

**GLOVEGOLD, LTD. d/b/a Seaport and Transport and Seaport and Transport Enterprises, Ltd., in personam, and M/V ANTHENOR EXPRESS, in rem,[1] Defendants.**

No. 92–1977–CIV–T–21A.

United States District Court,
M.D. Florida,
Tampa Division.

March 15, 1994.

---

1. The parties have stipulated that judgment be entered in favor of the Plaintiff against Defendant TBS–1992, Inc. Plaintiff has also notified the Court of an agreement to dismiss Defendant Tampa Bay Shipping without prejudice.

Paul D. Hardy and Pedro F. Bajo, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, for American Home Assur. Co.

Ronald D. McCall, Tampa, FL, for Tampa Bay Shipping, Inc. and TBS–1992, Inc.

Paul E. Parrish, Holland & Knight, Tampa, FL, for Glovegold, Ltd., d/b/a Seaport and Transport and Seaport and Transport Enterprises, Ltd., and M/V Anthenor Exp.

## ORDER

CHARLES R. WILSON, United States Magistrate Judge.

THIS CAUSE is before the Court on **Plaintiff's Motion to Transfer** (doc. 47). Plaintiff asks that the Court enter an order transferring this action from the Middle District of Florida to the Southern District of Florida. Plaintiff seeks transfer so that it may arrest the M/V ANTHENOR EXPRESS, over which it has not yet obtained *in rem* jurisdiction. Plaintiff contends that it failed to obtain proper *in rem* jurisdiction because the vessel has not called port in Tampa during the pendency of this action and arrest in this jurisdiction was therefore not possible. Plaintiff cannot refile this action in the Southern District because the statute of limitations has already run.

## I. DISCUSSION

### A. Procedural Parameters of 28 U.S.C. §§ 1404(a) and 1406(a)

■ Plaintiff cites to both 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a) in support of its motion to transfer and relies substantially on the case of *Internatio–Rotterdam, Inc. v. Thomsen*, 218 F.2d 514 (4th Cir.1955). In that case, the Fourth Circuit granted the plaintiff's request to transfer the admiralty action from the Southern District of New York to the District of Maryland. The focus of the Fourth Circuit's analysis was whether or not 28 U.S.C. § 1404(a) or § 1406(a) gives a federal district judge the authority to transfer admiralty proceedings in which process had not been served so that process might be served. The Fourth Circuit concluded that, in the interest of justice or for the convenience of the parties and witnesses, such a transfer can be made. However, given the Fourth Circuit's stated focus, this Court does not believe that the Fourth Circuit meant to suggest that transfer is appropriate in every case in which a transfer is necessary to effect service of process.

Plaintiff also relies on *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). However, the Court finds that Plaintiff has misconstrued the significance of the Supreme Court's holding in the same way it misconstrued *Internatio–Rotterdam*. In *Goldlawr*, the defendants contended that, because the Pennsylvania District Court did not have personal jurisdiction over them, it did not have the authority to transfer the action to the Southern District of New York. The lower courts found dismissal proper on this basis, and the Supreme Court granted certiorari. As in *Internatio–Rotterdam*, the Supreme Court focused not on specific facts of the underlying case, but on whether an order of transfer was procedural-

ly proper absent personal jurisdiction over the defendants. The Supreme Court answered the question in the affirmative. Therefore, after *Goldlawr* and *Internatio–Rotterdam*, there is no question that this Court *may* transfer the action.[2] However, the Court finds that neither case stands for the proposition that the Court *should* transfer the action. *See Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir.1980) (noting that *Goldlawr* "stated only that the interest of justice 'may require' that the actiion [sic] be transferred so as not to penalize the plaintiff." (Emphasis in original) (citation omitted). For guidance on that issue, the Court turns to case law that directly addresses the substantive parameters of 28 U.S.C. § 1404(a) and § 1406(a).

### B. Substantive Parameters of 28 U.S.C. §§ 1404(a) and 1406(a)

Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

■ Although these are two separate provisions, both require that the moving party demonstrate that the district to which transfer is sought is a district in which the action could have been—or might have been— brought. Both also require that the moving party demonstrate that such a transfer would

---

**2.** Justice Harlan's dissent in *Goldlawr* criticized the majority's implication that its holding applied when transfer was appropriate under § 1406(a), but not under § 1404(a). Recognizing the incongruity of which Justice Harlan warned, a number of lower courts have subsequently extended the holding to transfers that would more properly be characterized as § 1404(a) transfers by recharacterizing them as § 1406(a) transfers. *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1105 (5th Cir.1981). In *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir.1967), the Fifth Circuit

did just that. *Ellis*, 646 F.2d at 1105. However, in *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295, 297–98 (5th Cir.1963), the Fifth Circuit simply analogized a § 1404(a) transfer to a § 1406(a) transfer and found *Goldlawr* applicable. *Ellis*, 646 F.2d at 1106. The Fifth Circuit in *Ellis* thus concluded that "it remains the rule in this circuit that a transfer to a district in which personal jurisdiction over the defendant can be obtained may be properly made under either section 1404(a) or section 1406(a)." *Id.* at 1107 (citations omitted).

be "in the interest of justice." Because Plaintiff is the moving party, Plaintiff bears the burden of proving that these requirements are met and that a transfer is proper under § 1404(a) or § 1406(a). *Garay v. BRK Electronics,* 755 F.Supp. 1010, 1011 (M.D.Fla.1991). Therefore, Plaintiff's first step is to persuade the Court that this action "could have been brought" or "might have been brought" in the Southern District.

### 1. *Original Propriety of the Southern District*

■ Defendant Glovegold contends that the Court must determine whether service would have been proper in the Southern District on the date on which Plaintiff filed this action in the Middle District. Neither of the statutory provisions and none of the cases cited by Defendant Glovegold in support of this position actually uses the word "date." In the case of *Gipromer v. SS Tempo,* 487 F.Supp. 631, 633 (S.D.N.Y.1980), *citing American Tel. & Tel. Co. v. Milgo Elec. Co.,* 428 F.Supp. 50, 52 (S.D.N.Y.1977), the court did look to the exact date on which the claim commenced. However, in the earlier case of *Harry Rich Corp. v. Curtiss-Wright Corp.,* 308 F.Supp. 1114, 1116 (S.D.N.Y.1969), the same court asked whether the defendant had been amenable to process during the *month* in which the action was filed.

The Court finds the approach in *Harry Rich Corp.* more logical in admiralty cases because the *res* to be served is readily mobile. Defendant Glovegold's approach would leave Plaintiff not with a choice between two venues, but with no venue at all, simply because on the date that Plaintiff filed this action, the ANTHENOR EXPRESS was closer to the Caribbean than to Miami. Defendant Glovegold states that since February, 1992, the ANTHENOR EXPRESS has been used to conduct trade between Miami and various ports in the Caribbean. Because the ANTHENOR EXPRESS could not have been served in the Caribbean, the only venue in which it might have been served is the Southern District of Florida. Defendant Glovegold further states that the ANTHENOR EXPRESS made several visits to Miami every month. Therefore, under the approach in *Harry Rich Corp.,* Plaintiff could have brought this action against the ANTHENOR EXPRESS in the Southern District of Florida.

■ Where there are multiple defendants, the plaintiff must demonstrate that personal jurisdiction and venue in the transferee district would have been proper for all defendants. *Liaw Su Teng v. Skaarup Shipping Corp.,* 743 F.2d 1140, 1148 (5th Cir.1984). There is little question that if the Middle District had personal jurisdiction over Defendants, the Southern District would have also had personal jurisdiction. Personal jurisdiction exists on a statewide basis; the propriety of bringing an action in one district rather than in another district is a question of venue.

■ Contrary to Plaintiff's belief, venue in admiralty cases is not governed by 28 U.S.C. § 1391. Rule 82, F.R.Civ.P., specifically states that

[The Federal Rules of Civil Procedure] shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein. An admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a civil action for the purposes of Title 28, U.S.C. §§ 1391–93.

Instead, "[t]he general admiralty practice still prevails, permitting the venue of the suit *in personam* to be laid wherever the defendant can be validly served with process." *Fluor Corp. v. S/S President Coolidge,* 52 F.R.D. 538, 539 (S.D.N.Y.1971), *citing* 1 Moore's Federal Practice (2d Ed.) Para. 0.144 (13.–1). In other words, "it is clear that the venue of an in personam action in admiralty lies wherever the court has jurisdiction of the parties." *H & F Barge Co. v. Garber Brothers, Inc.,* 65 F.R.D. 399, 405 (E.D.La.1974), *citing* J. Lucas, Cases on Admiralty 296 (1969).

■ The merger of *in personam* jurisdiction and venue was illustrated in *In re McDonnell–Douglas Corp.,* 647 F.2d 515 (5th Cir.1981), in which the plaintiff brought the action in the Eastern District of Texas, but served the defendant's registered agent in the Southern District of Texas. The Fifth Circuit concluded that venue was nonetheless proper in the Eastern District, relying on the

statement in *H & F Barge* that "[t]he process of the United States District Court for the Eastern District of Louisiana ... runs, in admiralty in personam matters, to the Western District of this state." *In re McDonnell-Douglas Corp.*, 647 F.2d at 516, *quoting H & F Barge*, 65 F.R.D. at 405. Therefore, although Defendants were served in the Middle District of Florida, personal jurisdiction over them also flowed to the Southern District of Florida, and venue, following the personal jurisdiction, would have been proper in the Southern District had Plaintiff filed its action there.

Having concluded that this action could have been brought against all Defendants in the transferee district, the Court now turns to whether this action should be transferred in "the interest of justice."

### 2. *The Interest of Justice*

■ In *Cargill Inc. v. M/V Paschalis*, 1987 WL 17950, 1987 U.S.Dist. LEXIS 8888 (S.D.N.Y.1987), the court weighed a number of factors to determine whether a transfer would be "in the interest of justice":

"(1) convenience of the parties; (2) convenience of fact witnesses; (3) availability of process to compel reluctant witnesses; (4) the cost of obtaining the presence of witnesses; (5) access to proof; (6) calendar congestion; (7) where the relevant events took place; and (8) the interest of justice in genera [sic]."

*Id.*, 1987 WL 17950 at *5, 1987 U.S. Dist. LEXIS at *16, *quoting Car-Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82, 85 (N.D.N.Y.1977); *citing Willis Machinery & Tool Co. v. S.S. American Legend*, 1980 A.M.C. 2058 (S.D.N.Y.1980) (not officially reported); *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967). The Court finds these factors useful as they combine the "in interest of justice" requirement with the "for the convenience of the parties" language to form a fairly comprehensive set of guidelines.

Transfer is Plaintiff's only hope for obtaining jurisdiction over the ANTHENOR EXPRESS and, therefore, the Southern District would certainly be a more convenient forum from Plaintiff's perspective. The Court is not persuaded by Defendant Glovegold's assertion that transfer to the Southern District would "strip Glovegold of its ability to mount a defense." Unlike most transfer cases, this case does not involve transfer from a district in one state to a district in another state, nor is the transferee district particularly far from the transferor district. Defendant Glovegold contends that it will have to rely on witnesses provided by former co-Defendant Tampa Bay Shipping, and that these witnesses, who reside in the Middle District, are not subject to the subpoena power of the Southern District. Defendant Glovegold asserts that these witnesses will not voluntarily appear for trial in the Southern District. However, because Defendant Glovegold and Tampa Bay Shipping's employees essentially all reside in the Middle District, deposing the witnesses should not be a problem. Furthermore, the witnesses may be subpoenaed to appear for trial in the Southern District. Rule 45(c)(3)(A), F.R.Civ.P., provides:

On a timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, *except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from such place within the state in which the trial is held....* (emphasis added).

Pursuant to 45(c)(3)(B)(iii), if Defendant Glovegold demonstrates that it has substantial need of the witnesses' trial testimony and that the witnesses will be reasonably compensated for their appearance, the Court may order that the witnesses appear. The cost of this to Defendant Glovegold should not be substantial because its witness list is by no means extensive, and the Southern District is approximately four hours from the Middle District. Defendant Glovegold's exhibit list is also rather limited, and the Court is not persuaded that Glovegold will be inconvenienced by transporting its exhibits to the Southern District. Furthermore, the minutes from the pretrial conference held on March 8, 1994, reflect that the parties predict that trial will last only half a day. Therefore, the Court does not find that Defendant Glovegold or its witnesses would be particu-

larly inconvenienced if the action were transferred to the Southern District.

■ However, the Court finds that the calendar congestion consideration strongly militates against transfer. This case is set for trial in the Middle District on April 11, 1994. Were the case transferred to the Southern District, the case would go immediately to the bottom of the pile. This action was filed in late 1992, and the Court finds no benefit to be gained from a postponement of resolution. Although the Court agrees with Plaintiff that the statutory provisions do not mandate that a request for transfer be made within a certain time period, the Court finds Plaintiff's request rather too close to the eleventh hour. The Court is not swayed by Plaintiff's assertion that it delayed in filing this motion because of the possibility of settlement. That was a judgment call on Plaintiff's part and, in the absence of evidence that Defendants misled Plaintiff or otherwise acted in bad faith, does not justify a failure to prepare the case for trial by obtaining jurisdiction over named parties.

As to the location of the relevant events, Defendant Glovegold contends that all relevant acts that took place in the United States took place in Tampa. There is, however, no indication that any of the witnesses or exhibits are immutably intrinsic to the Middle District.

The last consideration is whether the transfer would be in the interest of justice in general. As Defendant Glovegold emphasizes, Plaintiff is seeking to undo what is essentially its own mistake. Defendant Glovegold contends that Plaintiff, by its own failure to conduct any discovery, did not locate and serve the ANTHENOR EXPRESS prior to filing this action. Defendant Glovegold contends that Plaintiff would have discovered that the ANTHENOR EXPRESS no longer called port in Tampa, but was instead trading between Miami and the Caribbean. Plaintiff contends that it did not conduct discovery to locate the ANTHENOR EXPRESS because it already knew of its location. However, such a contention hardly helps Plaintiff's case. As discussed above, Plaintiff's decision to not seek arrest of the vessel because of the ongoing settlement negotiations was a judgment call that does not now warrant transfer.

■ Contending that the ANTHENOR EXPRESS has been trading between Miami and the Caribbean all this time, Defendant Glovegold also argues that there has been no change of circumstances to warrant transfer of this action. In the Southern District of New York, the general policy is that when it is the plaintiff who is moving for a change of venue, the plaintiff must demonstrate that there has been a change in circumstances to warrant transfer. *E.g., Harry Rich Corp.,* 308 F.Supp. at 1118; *Clark v. Marine San Diego, Inc.,* Slip Opinion (S.D.N.Y.1980); *Harem–Christensen Corp. v. M.S. Frigo Harmony,* 477 F.Supp. 694, 698 (S.D.N.Y. 1979), *citing Harry Rich Corp.,* 308 F.Supp. 1114. However, other courts have specifically rejected this requirement. *E.g., Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 769 F.Supp. 208, 209 (E.D.La.1991); *Lake City Stevedores, Inc. v. S.S. Lumber Queen,* 343 F.Supp. 933, 935 (S.D.Tex.1972) (finding no implication of such a standard in 28 U.S.C. § 1404); *Gipromer,* 487 F.Supp. at 632–3 (finding that although earlier cases in the district required showing of change of circumstances, recent circuit case did not cite any change of circumstances but instead balanced relative hardships entailed in granting or denying transfer). For the reason given in *Lake City Stevedores,* this Court does not feel compelled to apply a change of circumstances requirement in the absence of controlling authority.

The timing of Plaintiff's motion strongly predisposes the Court to finding that a transfer of the action would not be in the interest of justice. The case had proceeded almost to the pretrial conference before Plaintiff filed this motion to transfer, and, until then, Plaintiff had made no effort to arrest, or protect its right to arrest, the ANTHENOR EXPRESS. Furthermore, although the Court has a strong interest in deciding actions on their merits, rather than on technicalities, some question exists as to Plaintiff's ability to arrest the ANTHENOR EXPRESS even if the action were transferred to the Southern District.

### C. *Former Rule 4(j), Federal Rules of Civil Procedure*

Defendant Glovegold contends that even if Plaintiff's motion were granted, Plaintiff

would be unable to arrest the ANTHENOR EXPRESS because of the 120 day limitation of the former Rule 4(j), F.R.Civ.P. This contention is more fully explored in Defendant's Motion to Dismiss and Plaintiff's response thereto. There is some dispute as to whether the former Rule 4(j) applies to *in rem* proceedings in admiralty.[3] Plaintiff relies on *Itel Container International Corp. v. Atlanttrafik Express Service, Ltd.*, 686 F.Supp. 438 (S.D.N.Y.1988), which states that

> In respect to [*in rem*] proceedings, this court has noted that "a defendant should not be able to obtain dismissal of a complaint for lack of *in rem* jurisdiction just by keeping the *res* out of the jurisdiction of the court for ten months," *Crispin Co. v. S/S Jowood*, 1973 A.M.C. 2623, 2624 (S.D.N.Y.1973) (Tyler, J.); so much the less should a four-month (120–day) absence suffice. If Rule 4(j)'s time limits were applied to the service of *in rem* process, the effectiveness of the proceeding *in rem*, which the Supplemental Rules were concerned to preserve, might thus be impaired.

*Id.*, at 444. However, other courts have either assumed or specifically ruled that Rule 4(j) does apply to *in rem* proceedings in admiralty. *Sembawang Shipyard, Ltd. v. M/V Charger*, 1991 WL 13756, 1991 U.S.Dist. LEXIS 1154 (E.D.La.1991); *Borgan v. M/V Sammi Frontier*, 710 F.Supp. 1300 (W.D.Wash.1988); *Blue Anchor, Inc. v. M/V Emanuel*, 1986 A.M.C. 112, 1983 WL 11 (E.D.Pa.1983).

This Court need not actually decide which is the better legal viewpoint because the Court finds it significant enough that such

question exists. Even if the Court were to transfer this action to the Southern District, there is no guarantee that the result sought by Plaintiff would, in fact, be achieved. The Court's only reason for transferring this action would be to allow Plaintiff to arrest the ship and facilitate a trial on the merits; with no guarantee that this will occur, the Court is reluctant to effect such a transfer.

## II. *CONCLUSION*

The Court is not persuaded that transfer is warranted. Although this action could have initially been brought in the Southern District of Florida against all Defendants, Plaintiff's motion for transfer comes late in the proceedings. Even more significantly, there is a considerable question as to whether Plaintiff would be able to arrest the ANTHENOR EXPRESS even if transfer were granted. Accordingly, it is

**ORDERED** that **Plaintiff's Motion to Transfer** (doc. 47) be **DENIED.**

Because of Plaintiff's failure to previously arrest the ANTHENOR EXPRESS and Plaintiff's representation that denial of this motion to transfer will render arrest impossible,

**IT IS FURTHER ORDERED** that:

1) The **Motion to Dismiss Defendant, M/V ANTHENOR EXPRESS, in rem** (doc. 46) is **DENIED** as **MOOT,** because the vessel has not and cannot be arrested and made a party and therefore need not be dismissed.

2) **Glovegold's Motion to File a Reply Memorandum** (doc. 53) is **DENIED** as **MOOT.**

**ORDERED.**

---

**3.** There is also some question as to whether the former Rule 4(j) or the current Rule 4(m) applies to these proceedings. However, because the 120 days elapsed prior to the December 1, 1993, enactment of the amendments to the Federal Rules of Civil Procedure, and because Plaintiff does not object to Defendant Glovegold's assertion that former Rule 4(j) applies, the Court will not address that issue.