HAREM–CHRISTENSEN CORP., Sargeant Inc., Northfield Cheese Co., Danland Food A/S D.A.K., Meat Packers Ltd., D.A.K. Foods, Inc., Otto Roth and Co., Inc., Majesty Inc. Food Corp., Plaintiffs,

v.

M. S. FRIGO HARMONY in rem, Cala d'Olivo S.p.A. Di Navigazione, Seatrade-Groningen, B.V. and Fellowship I/S, in personam, Defendants.

No. 78 Civ. 5781.

United States District Court, S. D. New York.

Oct. 3, 1979.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for plaintiffs by Raymond P. Hayden, Timothy D. Ford, New York City, of counsel.

Freehill, Hogan & Mahar, New York City, for defendant Seatrade-Groningen, B.V. by Robert L. Mahar, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant Fellowship I/S by James M. Estabrook, Robert A. Hulten, New York City, of counsel.

Walker & Corsa, New York City, for defendant Cala d'Olivo, S.p.A. di Navigazione by Christopher H. Mansuy, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This litigation involves an admiralty claim brought under Rule 9(h) of the Federal Rules of Civil Procedure. It arises out of an alleged breach of contract of carriage and relates to damages allegedly sustained by plaintiffs as the result of the alleged non-delivery, shortage, and/or loss of, and physical damage to certain shipments laden aboard the M.S. Frigo Harmony at Vejle, Denmark, and discharged at Gloucester, Massachusetts in November 1977. Plaintiffs are shippers, consignees or owners of said shipments. Defendants are the vessel in question, its owner, the voyage charterer, and the time charterer.

Defendant Seatrade-Groningen, B.V. ("Seatrade"), the time charterer, has moved to dismiss the complaint against it on the grounds that this court does not have jurisdiction over it, and that it is not a carrier under the Carriage of Goods by Sea Act of

1936, 46 U.S.C. §§ 1300 *et seq.* It has also moved for an order pursuant to 9 U.S.C. § 3 staying a cross-claim against it brought by defendant Cala d'Olivo S.p.A. di Navigazione ("Cala d'Olivo") pending arbitration. As we find that we do not have *in personam* jurisdiction, we must dismiss the complaint against Seatrade on that ground, and we consequently do not have occasion to consider the other elements of its motion.

■ Seatrade is a Dutch corporation which has its principal place of business in Groningen, the Netherlands. It is not a resident of New York, does not regularly transact business or engage in a persistent course of conduct in New York, is not qualified to do business in New York, does not maintain an office or any other continuous presence in New York, and has no agent for service or any other purpose in New York. Furthermore, the claims asserted in plaintiffs' complaint do not arise out of any business transacted by Seatrade in New York, or that was in any way directly connected with New York. Its contracts with defendants Cala d'Olivo, the vessel owner, and Fellowship I/S, the voyage charterer, were entered into in Groningen, the Netherlands, and Copenhagen, Denmark, respectively, and it delivered the shipments which are the subject of this litigation to Gloucester, Massachusetts.

In *Hanson v. Denckla* (1958) 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283, the Supreme Court held that "[h]owever minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U.S. at 251, 78 S.Ct. at 1238. Similarly, the Court observed in *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 that the due process clause of the Fourteenth Amendment to the United States Constitution "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. at 319, 66 S.Ct. at 160. It is clear to us that there do not exist the requisite "minimal contacts" between Seatrade and the State of New York to enable this court to exercise personal jurisdiction over it.

Moreover, even if it were constitutionally possible for us to assume jurisdiction, the applicable New York statute does not empower us to do so. In this connection, plaintiffs, as well as Seatrade's co-defendants argue that the economic impact of a non-domiciliary's acts outside of New York on a New York resident constitute sufficient contact with the State to satisfy the "minimal contacts" requirement. They point out that under C.P.L.R. § 302(a)(3)(ii) a New York court has "long-arm" jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to persons or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from intestate or international commerce." According to their theory, Seatrade is subject to this court's jurisdiction because it knew or should have known that its alleged breach of contract and/or negligence would have economic consequences on a New York consignee who was identified as such on the pertinent bill of lading.

In support of this argument, they cite *Fantis Foods v. Standard Importing* (1st Dept.1978) 63 A.D.2d 52, 406 N.Y.S.2d 763, *Motion to dismiss the appeal or to require an undertaking denied,* 45 N.Y.2d 1005, 413 N.Y.S.2d 147, 385 N.E.2d 1074. That case involved an alleged conversion of the property of a New York resident by a non-domiciliary in a commercial context outside of New York. As in the present case, the non-domiciliary in *Fantis, supra,* did not have any direct contacts with New York. However, over a strong dissent by two of the panel's five justices, the majority in *Fantis* held, *per* Justice Lupiano, that there was personal jurisdiction because the non-domiciliary's acts caused economic injury to the New York resident. "The test of foreseeability embodied in the statute is an objective one, to wit, whether the nondomi-

ciliary, viewed as one endowed with reasonable prudence, should expect the tortious act which he commits to have consequences in New York." 63 A.D.2d at 56, 406 N.Y. S.2d at 765–66.

■ We do not consider ourselves bound by the Appellate Division's decision in *Fantis, supra.* While a federal court is constrained to follow the highest court of the State in which it sits on issues of State law under the doctrine of *Erie v. Tompkins* (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and its progeny, we are satisfied that it is not necessarily bound by the rulings of intermediate or lower State courts on an issue on which the highest court of the State has not spoken. Thus, the Court of Appeals for the Second Circuit observed in *Roginsky v. Richardson-Merrell, Inc.* (2d Cir. 1967) 378 F.2d 832, that it is its established position that "when a federal court must determine state law, it should not slavishly follow lower or even upper court decisions but ought to consider all the data the highest court of the state would use." 378 F.2d at 851. Shortly thereafter, the Supreme Court similarly held that in the event there is no decision by the highest court of the State on a given issue of State law, "then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it [*sic*] may be said to be, in effect, sitting as a state court." *Commissioner v. Estate of Bosch* (1967) 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886.

In the instant litigation, we find the holding of the Appellate Division in *Fantis, supra,* to be wholly unpersuasive. We are convinced that if the New York Court of Appeals were confronted with the problem at issue in that case, it would adopt the position taken by Justice Sullivan in his dissenting opinion,[1] 63 A.D.2d 52, 64, 406 N.Y.S.2d 763, 771:

> "The majority's ruling would subject any tortfeasor doing business anywhere in the world to jurisdiction in New York solely because the plaintiff by virtue of its domicile, suffers a financial loss here. This is indeed a tenuous minimum contact with New York, and is constitutionally deficient to serve as the nexus with this state so that the maintenance of the suit does not offend ' "traditional notions of fair play and substantial justice." ' (*International Shoe Co. v. Washington*, 326 U.S. 310, 310, 66 S.Ct. 154, 90 L.Ed. 95.)"

Since we find that we do not have jurisdiction over Seatrade, we do not have the power to order it to make available for inspection any records not physically located within our jurisdiction or to have its non-resident officers deposed. *Cf. International Terminal Operating Co., Inc. v. Skibs A/S Hidlefjord* (S.D.N.Y. 1973) 63 F.R.D. 85. Therefore, we are unable to grant plaintiffs' request that they be allowed to conduct discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in a last-ditch effort to determine whether Seatrade has engaged in some as yet undisclosed form of "doing business" in New

---

1. Since we do not accept Mr. Justice Lupiano's opinion in *Fantis, supra,* as a statement of New York law, we need not consider whether the intentional tort of conversion at issue in that case is distinguishable, for purposes of C.P.L.R. § 302(a)(3)(ii), from the combined allegations of breach of contract and negligence featured in the litigation before us. However, we note that the New York Court of Appeals has found without merit the argument "that a breach of contract constitutes a tortious act and may form a basis for long-arm jurisdiction under CPLR 302 (subd. [a], pars. 2, 3)." *Amigo v. Marine Midland* (1976) 39 N.Y.2d 391, 396, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581, 584.

After this opinion had been written, defendant Fellowship I/S called our attention to

*Cryomedics, Inc. v. Spembly, Limited* (D.Conn. 1975) 397 F.Supp. 287, and urged us to hold that Seatrade's alleged presence in Massachusetts is sufficient to sustain the jurisdiction of this court under the "aggregated contacts" theory adopted in that case. However, since the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300 *et seq.*, contains no provision for the service of process, it can be effected only within the State of New York under Rule 4(f) of the Federal Rules of Civil Procedure, or pursuant to the New York "long-arm" procedure under Rule 4(d)(7). *Cf. Wells Fargo & Co. v. Wells Fargo Express Co.* (9th Cir. 1977) 556 F.2d 406, 416–19; *Amburn v. Harold Forster Industries, Ltd.* (E.D.Mich.S.D.1976) 423 F.Supp. 1302.

York which might subject it to the jurisdiction of this court.

 Finally, we must deny plaintiffs' motion to transfer this action to Massachusetts where, it is maintained, Seatrade would be subject to *in personam* jurisdiction. When a plaintiff is a movant for a change of venue pursuant to 28 U.S.C. § 1404(a), he must show a change of circumstances that has taken place since the filing of suit in order to prevail. *Harry Rich Corp. v. Curtiss-Wright Corp.* (S.D.N.Y. 1969) 308 F.Supp. 1114. In the instant case, nothing has changed since the time plaintiffs brought their action in this district. They have merely realized at this late stage that they made a mistake in the first place and brought suit in the wrong forum. That is not sufficient reason to compel a change of venue "in the interest of justice."

We accordingly grant defendant Seatrade's motion and dismiss the complaint against it.

SO ORDERED.